**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SIERRA CLUB, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-07-0608 |
| § | |
| FEDERAL EMERGENCY § | |
| MANAGEMENT AGENCY, *et al.,* § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

The Sierra Club, a national nonprofit environmental organization, filed this suit under Section 4104(g) of the National Flood Insurance Act, 42 U.S.C. § 4104(g), appealing a final flood elevation determination by the Federal Emergency Management Agency (FEMA) for Harris County, Texas and incorporated areas. (Docket Entry No. 1). GGP Bridgleland L.P., a landowner and developer, has moved to intervene under Federal Rule of Civil Procedure 24(a)(2) and (b). (Docket Entry No. 28). The Sierra Club opposed the motion, (Docket Entry No. 31), and GGP replied to the opposition, (Docket Entry No. 37). FEMA filed a Statement of Qualified No Opposition, (Docket Entry No. 36), in which it later clarified to state that it opposed intervention as a matter of right but did not object to permissive intervention. (Docket Entry No. 38). GGP responded to FEMA's filings. (Docket Entry No. 39).

FEMA has also moved to stay the proceedings, asserting that the Digital Flood

Insurance Rate Map ("DFIRM") currently contested by the Sierra Club will soon change when the Harris County Flood Control District ("HCFCD") submits a revised Letter of Map Revision ("LOMR"). (Docket Entry No. 46). GGP responded to the motion to stay. (Docket Entry Nos. 48, 52).

Based on a careful review of the motions, responses, and replies, and the applicable law, this court grants GGP's motion to intervene as a matter of right and defers deciding FEMA's motion to stay pending further information as to the status and content of the expected revised LOMR. No later than **July 10, 2008**, the parties must file a written submission stating whether the LOMR has been submitted, the extent of its changes, and the impact of any filing on the motion to stay.

The reasons are explained in detail below.

**I.     Background**

On September 30, 2004, FEMA published a preliminary version of the Flood Insurance Study ("FIS") report, with the DFIRM, proposing base flood elevations for Harris County. (Docket Entry No. 16 at 6; *id.*, Ex. A at 2). FEMA published the proposed base flood elevations in the local general circulation daily newspaper, the *Houston Chronicle,* on December 16, 2004 and December 23, 2004, and in the Federal Register on July 8, 2005. (Docket Entry No. 16 at 6; *id.*, Ex. A at 2). The notices invited the public, including potentially affected landowners, to submit written comments on the accuracy of the DFIRM. (Docket Entry No. 16 at 6; *id.*, Ex. A at 2).

Under the National Flood Insurance Act, "any owner or lessee of real property within

the community who believes his property rights to be adversely affected" by FEMA's determination of projected flood elevations "may appeal" the determination through an administrative review process. 42 U.S.C. § 4104(b).[1] The application for administrative review must be filed within ninety days after FEMA publishes the proposed flood elevation determination. The application must challenge the scientific or technical basis for the determination. *Id.* The Act provides for judicial review of final agency determinations in the administrative review. "Any appellant aggrieved by any final determination of the Director upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination." *Id.* at § 4104(g).

GGP owns approximately 11,500 acres in the Upper Cypress Creek area of northwest Harris County and is developing a planned community to be known as Bridgeland. (Docket Entry No. 28 at 2). GGP plans to develop Bridgeland over a twenty-year period. (*Id.*). When completed, the development will include over 20,000 homes and have a population projected at more than 65,000 residents. (*Id.*). Approximately 8,300 acres of the Bridgeland development fall within the Upper Cypress Creek watershed area. (*Id.* at 2–3).

GGP appealed FEMA's preliminary DFIRM under the National Flood Insurance Act,

---

[1] The National Flood Insurance Act also authorizes suits against the government "upon the disallowance by the Director of any [claims for the payment or adjustment of flood insurance claims]." 42 U.S.C. § 4072. This lawsuit does not involve the denial of flood insurance claims.

42. U.S.C. § 4104(B), alleging that the map did not account for improvements to Bridgeland that had raised the land elevation in certain areas. (*Id.* at 3). FEMA accepted the appeal and revised the flood plain to reflect elevation changes to GGP's property. (*Id.*). Although the final DFIRM increased the total area of Bridgeland falling within the flood plain, GGP was satisfied with the revised map and was prepared to proceed with its development activities. (*Id.*).

The Sierra Club and the Houston Voters Against Flooding ("HVAF") filed a formal administrative appeal with FEMA on March 23, 2005, within the ninety-day period set by the Act. The Sierra Club and the HVAF protested the proposed base flood elevations in the part of the map along the Cypress Creek watershed. (Docket Entry No. 1 at 8–10; Docket Entry No. 16 at 6–8; *id.*, Ex. A at 3–4). In the application for administrative review, the Sierra Club and the HVAF asserted that there were technical deficiencies in FEMA's analysis and modeling of the Cypress Creek watershed and that FEMA's base flood elevation determinations were premised on flawed scientific and technical evidence. (Docket Entry No. 1 at 8–10; Docket Entry No. 16 at 6–8; *id.*, Ex. A at 2–4).

In the administrative appeal, FEMA found that the submitted data did not demonstrate that the proposed flood elevations were scientifically or technically incorrect. (Docket Entry No. 16 at 8–9; *id.*, Ex. A at 4–5). FEMA also denied an appeal filed by the Cypress Creek Flood Control Coalition ("CCFCC"), which raised the same objections. (Docket Entry No. 16 at 7; *id.*, Ex. A at 3–5).

On January 3, 2006, the HCFCD sent a letter to FEMA acknowledging a modeling

4

problem with respect to areas that were part of the DFIRM and stating that the HCFCD would address the problem and provide new data. (Docket Entry No. 16 at 10). Both the HCFCD and the CCFCC agreed that even after the proposed FEMA map and base flood elevation determinations became effective, changes could be made through an LOMR. An LOMR could also change the determination that specific pieces of property fell within the flood plain. (Docket Entry No. 16 at 4, 10).

On December 18, 2006, FEMA issued a Letter of Final Determination adopting the DFIRM issued for Harris County, with an anticipated effective date of June 18, 2007. (Docket Entry No. 16 at 11; *id.*, Ex. A at 7). FEMA decided to proceed with the map with the knowledge that parts of it would likely be changed after the fact to correct inaccuracies. The HCFCD and CCFCC continued to work on the modeling problem, intending to seek map revisions through an LOMR. (Docket Entry No. 16 at 10–11).

The Sierra Club filed suit seeking judicial review of FEMA's final base flood elevations and DFIRM for the Upper Cypress Creek watershed area. (Docket Entry No. 1). GGP moved to intervene under Federal Rule of Civil Procedure 24. (Docket Entry No. 28). GGP submitted the affidavit of Joseph H. Necker, Jr., Vice President of Development of Bridgeland GP, LLC, in support of its intervention motion. (Docket Entry No. 28, Ex. A). GGP asserted that it is entitled to intervention as a matter of right because: (1) its application is timely; (2) it has a significant property interest relating to the subject of the action; (3) the action's disposition could impair or impede GGP's ability to protect that interest; and (4) neither the Sierra Club nor FEMA adequately represent GGP's interests. (Docket Entry No.

28 at 1). In the alternative, GGP asserted that it satisfies the standard for permissive intervention because: (1) its application is timely and will not result in prejudice to the existing parties; (2) its claims raise issues of law and fact identical to the issues currently pending before the court; and (3) it is likely to contribute to the development of the factual issues. (*Id.*). The Sierra Club opposed GGP's motion to intervene. (Docket Entry No. 31).

On March 6, 2008, FEMA filed a Clarification and Court Advisory objecting to the intervention and suggesting that the court "hold all proceedings in this matter in abeyance pending final resolution of the LOMR, which would then be published in the Federal Register and would then be subject to administrative or judicial challenge by Sierra Club, GGP, or any other eligible party." (Docket Entry No. 38 at 4). FEMA attached a letter from HCFCD dated February 11, 2008, stating that HCFCD was in the process of reevaluating the Upper Cypress Creek watershed and that its "submittal should be ready by March 28, 2000." (Docket Entry No. 38, Ex. A). GGP's response stated that FEMA had failed to meet the legal standards for a stay and had improperly filed its request. (Docket Entry No. 39 at 5). On April 15, 2008, GGP notified the court that HCFCD had not submitted its LOMR to FEMA as anticipated on March 28, 2008. (Docket Entry No. 44).

FEMA now moves to stay this litigation pending final resolution of the HCFCD LOMR through its administrative appeal process. (Docket Entry No. 46). FEMA attached a letter from HCFCD dated April 18, 2008, stating that the LOMR, "with any subsequent changes, will be ready to submit to FEMA on or before June 9, 2008." (Docket Entry No. 46, Ex. A). GGP argued that FEMA has not presented valid grounds for its motion, (Docket

Entry No. 48), and that the original basis for the motion no longer exists because FEMA has filed an administrative record, (Docket Entry No. 52).

Both motions are analyzed below.

## II.     The Motion to Intervene

### A.     The Legal Standards

Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a).  The courts have interpreted Rule 24(a)(2) to require that: (1) the intervention application be timely; (2) the applicant have an interest relating to the property that is the subject of the action; (3) the applicant is so situated that the disposition may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties.  *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997) (citing *Sierra Club v. Glickman*, 82 F.3d 106, 108 (5th Cir. 1996)).

Rule 24(b)(1) provides:

> On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

FED. R. CIV. P. 24(b).  Permissive intervention is appropriate when: "(1) timely application

is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). District courts should also consider whether the existing parties adequately represent the proposed intervenor's interests and whether the intervenor's presence is likely to contribute significantly to the development of underlying factual issues. *Id.* at 189.

**B.     Analysis**

*1.     Intervention as a Matter of Right*

GGP asserts that it is entitled to intervention as a matter of right because: (1) its application is timely; (2) it has a significant property interest relating to the subject of the action; (3) the disposition of the action could impair or impede its ability to protect that interest; and (4) neither the Sierra Club nor FEMA adequately represent GGP's interests. (Docket Entry No. 28 at 1). The Sierra Club opposes intervention as a matter of right, asserting that GGP's application is untimely and that disposition of this action will not impair or impede GGP's ability to protect its interests. (Docket Entry No. 31 at 7). Specifically, the Sierra Club argues that GGP had a two-year opportunity – between January 2006 to January 2008 – to participate in computer modeling work done by HCFCD, and that GGP will have the administrative option of appealing any changes to flood elevation levels under 42 U.S.C. § 4104 and 44 C.F.R. § 67. (Docket Entry No. 31 at 5). FEMA opposes GGP's motion to

intervene as a matter of right, agreeing with the Sierra Club that the result in this case will not impair or impede GGP's ability to protect its interest because it has these administrative review rights.  (Docket Entry No. 38 at 1).

GGP argues that the timeliness analysis should focus on postcomplaint conduct. (Docket Entry No. 37 at 4–5).  GGP also argues that the availability of posttrial administrative options through which it could theoretically challenge revised flood elevations is irrelevant in light of the practical impairment standard.  (*Id.*).

To determine timeliness under Rule 24(a)(2), courts consider:  "(1) [t]he length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely."  *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).  "The analysis is contextual; absolute measures of timeliness should be ignored."  *Id.* Courts have discretion to allow intervention "where no one would be hurt and greater justice could be obtained."  *Id.* (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

9

The Fifth Circuit has "rejected the notion that the date on which the would-be intervenor became aware of the pendency of the action should be used to determine whether it acted promptly." *Espy*, 18 F.3d at 1206; *Stallworth*, 558 F.2d at 264. "A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties." *Espy*, 18 F.3d at 1206. The first factor of the timeliness analysis "focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996). Filing a motion to intervene before entry of judgment favors finding that the motion was timely. *Id.* at 1001 (citations omitted).

"Timeliness is not determined solely by the length of time that passes before a motion to intervene is made." *Ass'n of Prof'l Flght Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986). "[T]he more important question is not the mere length of time but the possibility of prejudice to existing parties that the delay may cause. This consideration is to be evaluated against the liberal treatment that is to be accorded applications for intervention of right." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970). Where there is no prejudice to existing parties, courts have allowed intervention after an applicant's extended delay in filing. *See id.* at 1125–26 (one-year delay not untimely where intervenor's timing caused no prejudice because "few legally significant events" had occurred).

The Sierra Club filed its complaint on February 15, 2007. (Docket Entry No. 1). The

court denied FEMA's motion to dismiss and motion for summary judgment on October 29, 2007. (Docket Entry No. 26). GGP moved to intervene on January 14, 2008. Although GGP waited eleven months to file its motion from the time it reasonably should have known of its interest in the case, its intervention at this stage will not cause prejudice to the Sierra Club or FEMA. *See Diaz*, 427 F.2d at 1125–6. If denied intervention, GGP may suffer prejudice because of its property interests relating to the subject of the action.

The Sierra Club asserts that the fact that GGP had a two-year opportunity to participate in HCFCD's computer modeling is an unusual circumstance weighing against finding that the intervention motion was timely. (Docket Entry No. 31 at 5). The period before the litigation is not relevant to the timeliness of the motion to intervene; GGP neither knew nor should have known of its interest in this litigation before the litigation was filed. GGP's motion to intervene was timely, satisfying the first factor.

The parties do not dispute that GGP has significant property interests relating to the subject of the action. (Docket Entry No. 31 at 5). The Sierra Club and FEMA assert that this action's disposition will not impair or impede GGP's ability to protect its interests because it may file an administrative appeal of any future flood plain elevation determinations under 42 U.S.C. § 4104 and 44 C.F.R. § 67. (Docket Entry No. 31 at 5; Docket Entry No. 38 at 4). The practical impairment standard does not require a proposed intervenor to show that it will be bound by the disposition of the action. *Edwards*, 78 F.3d at 1004–05. The ability of a party seeking intervention to raise its concerns in future proceedings is not sufficient to ensure that

the party is able to protect its interests because "the task of reestablishing the status quo" in later proceedings can be "difficult and burdensome." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding that the ability to reverse an unfavorable ruling by bringing a separate lawsuit did not as a practical matter mean that a party seeking to intervene could protect its interests when its revenue losses during any interim period would be substantial and likely irreparable); *see also Natural Res. Def. Council v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977) ("[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation."). Courts have found intervention appropriate where a nonparty faces potential consequences in the interim period after entry of judgment. *See, e.g.*, *Fund for Animals, Inc.*, 322 F.3d at 735 (holding that the possibility of substantial lost revenues during an interim period warranted intervention). An intervenor's interest may also be practically "impaired by the stare decisis effect of the district court's judgment" on subsequent proceedings. *Espy*, 18 F.3d at 1207 (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992)).

Joseph Necker's affidavit states that the flood plain elevation changes requested by the Sierra Club would require GGP to locate and move more than 5.5 million cubic yards of fill to the affected areas, at a cost estimated at $28 million. (Docket Entry No. 28, Ex. A, ¶11). Regardless of the availability of an administrative appeal, the results of this case may adversely GGP's interests in the interim. *See Fund for Animals, Inc.*, 322 F.3d at 735. The disposition of this case may also affect GGP's ability to protect its interests in subsequent administrative

12

proceedings. *See Espy*, 18 F.3d at 1207. The potential for such effects on GGP's interests supports granting intervention as a matter of right.

The Sierra Club and FEMA do not suggest that they adequately represent GGP's interests in this action. The Sierra Club's position is directly opposed to that of GGP, while FEMA is a government agency representing the public interest. (Docket Entry No. 28 at 13). GGP's unique position as the owner and developer of Bridgeland satisfies the fourth prong of the intervention inquiry. All four factors supporting intervention as a matter of right are satisfied; GGP is entitled to intervene.

Even if GGP was not entitled to intervene as a matter of right, permissive intervention would be warranted. As discussed above, GGP's motion was timely. The Sierra Club and FEMA do not suggest that GGP's intervention will prejudice the adjudication of their rights. Nor do the Sierra Club or FEMA claim to represent GGP's interests. Because GGP's property falls within the Upper Cypress Creek watershed area, GGP will raise issues of law and fact consistent with those presently before the court. As a private land developer, GGP occupies a different position and has different interests than the Sierra Club and FEMA. GGP is in a position to provide evidence of the impact of modified flood elevation levels on private land development in the area, evidence that neither the Sierra Club nor FEMA have an incentive or even ability to develop or submit.

GGP's intervention motion is granted.

### III. The Motion to Stay

### A.     The Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The power to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55. A court must not abuse its inherent power to stay. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985). "Generally, the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization." *Id.* To meet this burden, the moving party should show that its motion is supported by "genuine necessity." *Id.* A court should not decide a motion to stay based on a party's speculative concerns. *See, e.g.*, *Provencio v. Vazquez*, No. 07-CV-0069-AWI-TAG, 2007 WL 1614827, at *2–4 (E.D. Cal. June 4, 2007) (recommending that defendant's motion to stay be granted where plaintiff raised only speculative concerns in opposition); *Crosetto v. Heffernan*, No. 88-C-433, 1990 WL 32310, at *2 (N.D. Ill. February 22, 1990) (granting defendant's motion to stay where defendant raised issues based on "more than mere speculation").

### B.     Analysis

FEMA moves for a stay of eight months after HCFCD's submission of a complete LOMR and/or until the LOMR issues are finally resolved. (Docket Entry No. 46 at 8). FEMA points to HCFCD's February 1, 2008 letter to show that the not-yet-submitted LOMR will

contain "a better calibration" of high water mark and flow data for the Upper Cypress Creek watershed. (Docket Entry No. 46 at 6; Docket Entry No. 38, Ex. A). FEMA asserts that "[i]t would be a waste of resources for all parties to litigate Sierra Club's claim on the current DFIRM that will most likely be changed," particularly because future issues can be resolved through its administrative appeal process. (Docket Entry No. 46 at 5–6).

GGP responds that FEMA has not demonstrated a genuine necessity for a stay and that it is unnecessary because FEMA has already filed its administrative record. (Docket Entry No. 48 at 4–5; Docket Entry No. 52). GGP also argues that the motion "is based purely on speculation" about the timing and results of HCFCD's pending LOMR. (Docket Entry No. 48 at 4–5). GGP objects to the length of the stay requested and asserts that the results of any later possible administrative action are irrelevant to the issue of whether the current action should be stayed. (*Id.* at 6).

HCFCD did not submit a revised LOMR to FEMA as anticipated on March 28, 2008. (Docket Entry No. 44). HCFCD now expects to submit the LOMR near June 9, 2008. (Docket Entry No. 46, Ex. A). The results are unknown. Decision on the motion to stay is deferred. No later than **July 10, 2008**, the parties must file a written submission stating whether the LOMR has been submitted, the extent of its changes, and the impact of any filing on the motion to stay.

## IV.     Conclusion

GGP's motion to intervene as a matter of right is granted. FEMA's motion to stay is

deferred, subject to reviewing the parties' submissions on the expected LOMR.

       SIGNED on June 11, 2008, at Houston, Texas.

                                                _____

                                                       Lee H. Rosenthal
                                                   United States District Judge